### D. E. RYAN v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 19, 1903.

Nos. 13,425—(120).

**Carrier—Bill of Lading.**

As between the carrier of goods and the owner to whom the same are consigned, the bill of lading is a reliable symbol of title, and vests in the legitimate holder thereof the right to possession of the property. Ratzer v. Burlington, C. R. & N. Ry. Co., 64 Minn. 245, followed. Bank of Litchfield v. Elliott, 83 Minn. 469, distinguished.

**Change of Destination.**

The true owner of property in the possession of a common carrier for transportation may have the same diverted at a station on the route between the shipping point and the place of destination while in transit, but may be required to produce the bill of lading or furnish other evidence of ownership to entitle him to this right.

Action in the municipal court of Minneapolis to recover $187.50 for refusal of defendant to divert at an intermediate point a carload of

[1] Reported in 95 N. W. 758.

merchandise forwarded over defendant's railway line and consigned to plaintiff at Minneapolis. The case was tried before Dickinson, J., who found in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appealed. Reversed.

*Rome G. Brown* and *Charles S. Albert,* for appellant.

The carrier delivers at his peril when there is an outstanding bill of lading. A change of destination is as much a change of delivery as a change in the party to whom it is to be delivered. And it is the carrier's duty and right to first ascertain whether or not a person claiming to have the authority to order either change has any right to do so, and in order to ascertain this it has the right to demand and have produced for its inspection the bill of lading. It has no right to change the shipment in any way, either to delay or to send to some other place or to some other person, without an order from the person holding the bill of lading, and this bill must be produced at the time of the demand, or the carrier makes the change at his peril.

*George C. Stiles,* for respondent.

LOVELY, J.

Damages are sought in this action for the failure of a railway carrier to comply with a request by the consignee of a car of apples to divert it while in transit at a point between the place of shipment and its destination. The cause was tried to the court, who made findings of fact and ordered judgment for plaintiff for the amount claimed in the complaint. There was a denial of a motion for new trial, from which order defendant appeals.

Upon the findings of fact, amply supported by the evidence, it appears that the firm of Johnson & Co., of Diamonds, in the state of Washington, shipped a carload of apples to plaintiff at Minneapolis. The apples were delivered to the Oregon Railroad & Navigation Company for transportation on October 22, 1901, thereafter transferred by the initial carrier to defendant at Spokane, and in due time forwarded by the latter to the point of destination. The initial carrier delivered to the shippers its bill of lading, in which Johnson & Co. were named as consignors and plaintiff as consignee. When the goods were shipped, the consignors informed plaintiff of that fact

by telegram, on the receipt of which the latter requested an agent of defendant at Minneapolis, three or four days before the apples went through Devils Lake on defendant's line, to set the car off at that place, and the damages awarded were for failure to comply with this request.

There was some controversy whether the agent had authority to act upon the request for the diversion of the car, but, in the view we have taken of the law applicable to the issues, we have not thought it necessary to discuss this question, but shall assume that such authority did exist. It was found upon competent evidence that, when the request to set off the car at Devils Lake was made, the agent inquired of the plaintiff whether he had a bill of lading; that plaintiff then stated that he would produce it as soon as it was received from the shipper; but it was also found by the court that it was not furnished to defendant until October 28 or 29, when the car had actually passed Devils Lake in the course of transportation, and could not then be stopped at that place. It also appeared that, at the time the request was made to divert the car at the intermediate point, the agent said he would see what could be done with reference to changing its destination, but neither he nor any other agent of defendant made any promise or agreement with plaintiff that the stoppage would be made. There is no claim that there was any waiver on the part of defendant of the production of the bill of lading or other evidence of plaintiff's title to the property.

It is proper, on the facts, to assume for the purpose of this case that the owner of goods transported by a common carrier has the right to have his consignment, while in transit, diverted at any intermediate point through which it passes; but such right of diversion cannot add to the burdens of the carrier, or require it to do more than comply with a proper and legal demand therefor. Hutchinson, Carr. (2d Ed.) 337, and notes; 5 Am. & Eng. Enc. (2d Ed.) 214. It necessarily follows that some evidence of the right of the party to make the diversion may be demanded by the carrier before the goods reach the stopping point, for the person authorized to have that right could not require the goods to be reshipped and returned at the extra expense of the carrier; hence the question still remains whether the request to have the car put off at Devils Lake required the defendant to com-

ply therewith without the production of the bill of lading or further evidence of plaintiff's ownership of the property than was furnished in this case.

In an action in this court, where the consignor of goods in transit requested the delivery of the same at an intermediate point without producing the bill of lading, the carrier was held liable to a third party to whom an assignment of that evidence of title to the property had been previously made. This court in that case held that:

"A well-established custom has grown up in commercial circles by which such bills of lading are treated as the symbols of title to the property in transit, are taken as security for money advanced, and indorsed and delivered as a transfer of the property. This is well understood by the railroad companies and every one else. To allow the railroad companies to ignore this custom would be to destroy the custom itself." Ratzer v. Burlington, C. R. & N. Ry. Co., 64 Minn. 245, 66 N. W. 988.

The reasons for this rule are fully considered in this case, and as a result of the decisions cited therein it was further said:

"It is hardly necessary to cite authorities to the general proposition that, when a bill of lading is outstanding, the railway company delivers the goods at its peril, without a production; * * * and, if it so delivers them to some one other than the bona fide holder for value of the bill of lading, it is liable to him for conversion of the goods;" and it was held that the carrier was estopped from showing that it delivered the goods to the shipper, who had assigned the bill of lading.

Counsel for plaintiff insists that this decision does not apply, for the reason that the bill of lading issued in this case was not negotiable, since it contained this provision:

> "In order to render this bill of lading negotiable the property shipped thereunder must be consigned to order of owner without any conditions or limitations other than name of party to be notified of arrival of property,"

with other provisions that would impair its negotiability in the sense in which that character would attach to ordinary commercial paper.

We have recently held that, between parties other than the carrier

and the true owner or consignee of goods, the bill of lading is prima facie evidence of title, which may be rebutted and contradicted. Bank of Litchfield v. Elliott, 83 Minn. 469, 86 N. W. 454. But as between the carrier and the person entitled to receive the property at its hands the rule laid down in the Ratzer case has not been changed, and it is not obvious, in view of the usual customs and usages of the commercial world, which we must recognize and enforce so far as lawful, that we should abrogate or modify the effect of the salutary doctrine there laid down. If we were to hold upon the facts in this case that the actual consignee of goods in transit could divert or rightfully demand possession at an intermediate point without the production of the prima facie evidence of his ownership, or some assurance or reasonable proof that he was entitled to have his request complied with, we would deny to the carrier reasonable protection under the rule we have adopted, which would impose the onerous and oppressive burden of determining the ownership of the property upon which it must act at its peril; hence it follows that while the bill of lading is outstanding, and the effect of this transfer by the holder conveys, according to commercial usages and the customs of the country, the title to the property, the carrier should have the right to require its production, and we must hold that this is a prerequisite for its delivery or diversion. Since the bill of lading was not in this case produced, although requested by defendant, and no other evidence of ownership furnished the carrier than that the person demanding the diversion was the consignee, this did not establish his right to have the goods set off.

It is true that at the time when the request was made the plaintiff did not have the bill of lading. It is also true that in the ordinary course of the mails he could not have had it at a time when it would have been available. But this was his misfortune, against which the court cannot relieve him without destroying the force of the rule established in Ratzer v. Burlington, C. R. & N. Ry. Co., supra.

We might in this connection, however, say that it is not probable that under such circumstances, where the true owner of the goods furnishes proper assurance and evidence of his title, and offers indemnity to the carrier, that the latter could arbitrarily refuse to act upon his request. When a case arises where the bill of lading is not

in the hands of the consignee, and the latter is legally entitled to have it, and he furnishes evidence of such right with suitable protection to the carrier, this question will no doubt be properly met and determined. It is not before us at this time, for upon the evidence and findings nothing further was done by the plaintiff than to make the request to stop the goods at Devils Lake, which was not promised by the carrier, and was not alone sufficient to impose that obligation upon the defendant.

The order appealed from is reversed, and a new trial granted.