BARNUM GRAIN COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 26, 1907.

Nos. 15,251—(141).

**Bill of Lading—Negotiability.**

A bill of lading, upon which is stamped the words "not negotiable unless delivery is to be made to consignee or order," is exempt from the provision of section 7649, G. S. 1894, and the rights of parties thereunder are determined by common-law principles.

**Same—Delivery by Carrier.**

If a railway company, after issuing such a bill of lading, delivers the goods to the consignee named therein, without requiring the bill of lading to be produced, it does so at its peril.

Action in the district court for Hennepin county, to recover $1,080 for the conversion of a carload of wheat. The facts were stipulated and the court, Holt, J., ordered judgment in favor of plaintiff for $1,000. Defendant's motion to amend the findings of fact was denied. From an order denying a motion for judgment notwithstanding the verdict and decision or for a new trial, defendant appealed. Affirmed.

This was an action to recover damages for the conversion of a carload of wheat. The facts were stipulated, and from the stipulation the court found: That during all the times mentioned in the complaint the plaintiff and the defendant were corporations, organized and carrying on the business therein stated. That on and prior to January 10, 1905, at the village of Hampden, North Dakota, a firm by the name of Iverson Bros. & Anderson were engaged in buying and selling grain. That on said January 10, 1905, this firm delivered to the defendant, as such common carrier, in said village of Hampden, sixty thousand pounds of No. 2 northern wheat, which was loaded by defendant into its car No. 77,524, consigned to McKinnon, Son & Co., at Duluth, Minnesota. That at the time of so receiving said wheat

[1]Reported in 112 N. W. 1030, 1049.

said defendant duly issued its certain bill of lading therefor, substantially in the following form:

GREAT NORTHERN RAILWAY LINE.

GREAT NORTHERN RAILWAY COMPANY.

Hampden Station, January 10, 1905.

Received from Iverson Bros. & Anderson, shippers.

The property described below in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said Great Northern Railway Company agrees to carry to the said destination, if on its line; otherwise, to deliver to another carrier on the route to said destination.

It is mutually agreed that any service to be performed hereunder shall be subject to the terms and conditions of the Great Northern Railway Company's freight tariffs, and to all conditions, whether printed or written, indorsed thereon, and which are hereby agreed to by the shippers and by them accepted for themselves and their assigns as just and reasonable. Initials G. N.; car number 77,524; kind of grain, wheat; weight, 60,000.

In apparent good condition. One car of wheat to be transported to Duluth station, subject to elevator delivery on this company's track, consigned to McKinnon, Son & Co.

Destination Duluth, loaded to the grain line.

That on the face of said bill of lading was stamped in red letters the following clause:

"Not negotiable unless delivery is to be made to consignee or order." That said bill of lading was duly issued by the defendant through its authorized agent at said Hampden.

That said Iverson Bros. & Anderson drew a draft for $1,000 upon the consignee, McKinnon, Son & Co., of Duluth, Minnesota, and attached the draft to the bill of lading so delivered to them by the defendant, and caused the same to be sent through the First State Bank of Hampden, North Dakota, and the First National Bank of Minneapolis. That on January 13, 1905, the consignee, McKinnon, Son & Co., requested the plaintiff herein to pay the draft with the bill of lading so attached,

and agreed to pay any overdraft to the plaintiff if the wheat represented by the bill of lading was not of sufficient value to pay the draft in full. That pursuant to said request plaintiff on January 14, 1905, paid to the bank at Duluth the draft of $1,000, and the bank thereupon delivered the bill of lading attached thereto to the plaintiff, and the plaintiff paid the draft in the sum of $1,000, and received and retained the bill of lading, in the belief that the wheat was being shipped in accordance with the bill of lading, and that it still holds the same, and has not been repaid said $1,000.

That the defendant never delivered the wheat, or any part thereof, to plaintiff, although plaintiff has duly demanded the same; but the defendant has always refused, and still refuses, to deliver the wheat, or any part thereof, to plaintiff, or any part of the draft so paid by plaintiff. That said car of wheat in the regular course of transportation would have arrived at the city of Duluth on January 20, 1905, and was worth in said city at that time more than $1,012.

It is further found: That upon January 13, 1905, said shippers, Iverson Bros & Anderson, after said bill of lading with the said draft attached had been deposited by them in said First State Bank of Hampden, requested the agent of the defendant to divert said car from Duluth to Minneapolis. That said defendant complied with said request and shipped said car to Minneapolis, instead of Duluth, without requiring said bill of lading to be returned or exchanged; and the defendant thereupon did not carry said wheat to Duluth, but carried the same to Minneapolis and delivered the same to E. L. Welch & Co. on January 20, 1905, under a general order given it by McKinnon, Son & Co. to deliver all grain shipped to the latter to said E. L. Welch & Co. at Minneapolis. That during said time said McKinnon, Son & Co. had offices in both cities of Minneapolis and Duluth and did business in each of said cities; and on said January 20, 1905, said McKinnon, Son & Co. sold said wheat upon commission through the said E. L. Welch & Co., and rendered an account to said Iverson Bros. & Anderson on February 16, 1906.

It is further found: That on January 14, 1905, the said shippers, Iverson Bros. & Anderson, notified the said consignees, McKinnon, Son & Co., at Minneapolis, that the destination of said wheat had been changed from Duluth to Minneapolis; but said plaintiff was not in-

formed by said McKinnon, Son & Co. of such change in the place of destination of said wheat and had no knowledge whatever thereof. That on January 13, 1905, said Iverson Bros. & Anderson did notify said First State Bank of Hampden of the change in destination of said grain from the city of Duluth to the city of Minneapolis, and said Iverson Bros. & Anderson at the time of making said draft did notify said First State Bank of Hampden to send said draft to Minneapolis, to be there presented to said McKinnon, Son & Co., and that such notification was made in pursuance of a notice received from said McKinnon, Son & Co. some time prior to said January 10, 1905, that all drafts should be sent to Minneapolis and there presented to said McKinnon, Son & Co., whether shipments of grain were made to Duluth or Minneapolis; but that the said Barnum Grain Company had no notice or knowledge of the notification given by said Iverson Bros. & Anderson on January 14, 1905, of the change in the destination of said grain, or notification to send said draft to Minneapolis to be there presented to said McKinnon, Son & Co., except such notices, if any, as would be charged to said Barnum Grain Company from such as were given to the First State Bank of Hampden or to said defendant at the time of making the change as aforesaid, or to said McKinnon, Son & Co.; nor was said plaintiff informed by said McKinnon, Son & Co. of the notification by said Iverson Bros. & Anderson that all drafts should be sent to Minneapolis and there presented to said McKinnon, Son & Co.; nor did defendant, prior to the time of paying said draft by plaintiff, inform plaintiff itself of such change of destination.

Upon these facts the court ordered judgment against the defendant for the sum of $1,000, with interest thereon from January 20, 1905.

*Rome G. Brown* and *Charles S. Albert,* for appellant.

There was plainly stamped upon the forwarding order which was delivered by the shipper to the carrier, the words "Not Negotiable." This was notice to the carrier that the bill of lading issued upon this forwarding order was not negotiable, and that delivery was to be made in accordance with the directions given by the shipper that the bill was not negotiable. In accordance with the shipping directions the defendant carrier issued and delivered to Iverson Bros. & Anderson a bill of lading, across the face of which was indorsed in red ink, so that it

would be express notice to everyone inspecting the bill of lading, the words "Not negotiable unless delivery is to be made to consignee or order." By the terms of the bill of lading, delivery was not to be made to "consignee or order", but was to be made direct to "McKinnon, Son & Co." This delivery was made. The Barnum Grain Co., when it received the bill of lading, had express notice, first: That the bill of lading was "not negotiable", and second: That delivery was to be made to McKinnon, Son & Co. With this notice brought directly home to the Barnum Grain Co., it took the bill of lading at its peril. The notice brought home to the Barnum Grain Co. the knowledge that the Great Northern Railway Co. had the right to rely upon the fact that if delivery was made to the consignee, McKinnon, Son & Co., the Great Northern Railway Co. was then absolved from any liability with respect to the delivery of the wheat. In the face of this notice and knowledge and at its own risk, the Barnum Grain Co. paid the draft attached to the bill of lading. It did this relying upon the representations made by McKinnon, Son & Co. that they would cause delivery of the car to be made to the Barnum Grain Co. But this McKinnon, Son & Co. did not do. Instead, they took possession of the car which was consigned to them direct and sold it. They did not cause delivery to the Barnum Grain Co. nor did they reimburse the Barnum Grain Co. for the amount it had advanced upon the draft. This was a matter which was entirely between the Barnum Grain Company and McKinnon, Son & Co., and after their failure to cause delivery of the car to the Barnum Grain Co. and the consequent damage to the Grain Co., McKinnon, Son & Co. would be liable to the plaintiff. Its remedy is against McKinnon, Son & Co. and not against the defendant.

The whole course of legislation and judicial construction upon the subject of bills of lading in the State of Minnesota establishes the fact that when the words "not negotiable" are stamped upon the face of the bill of lading and are clearly brought to the attention of the consignor, carrier and consignee, they are put there for a specific purpose and that purpose is to destroy the negotiability of the bill of lading. The words are plain and unequivocal and mean what they say. They are put there not alone for the benefit of the shipper or of

the consignee, or of people dealing with them, but they are also inserted for the benefit of the carrier.

The carrier has the right to rely upon them to the fullest extent. The bill of lading is the contract existing between the carrier and the shipper defining the rights and liabilities of each. There are many terms and conditions contained in such contract. It governs not only the person to whom the wheat is to be delivered, but how it is to be handled, questions of delay, rates, warehousing conditions, weights, and many other matters. When the carrier is notified that the consignment is billed straight, notice is given it that the delivery may be made direct to the consignee without the surrender of the bill of lading. This is further enforced by the fact that the words "not negotiable" are stamped plainly upon the instrument. When the bill of lading does not contain these words and the consignment is made to "or order", "to the order of", or "notify", express notice is given the carrier that the bill of lading may be negotiated, and that if it surrenders the car without the production of such negotiable bill of lading, it does so at the risk of responding in damages to any bona fide holder of the bill of lading to whom it has properly been negotiated. Such is not the case here. If there ever was a consignment which could be properly limited to a single consignee and to no other, this is such a case. It makes no difference that the destination of the car was changed from Duluth to Minneapolis; McKinnon, Son & Co. who did business in Minneapolis were the same McKinnon, Son & Co. who did business in Duluth. This was expressly admitted and stipulated by the plaintiff. The arrangements made with the shippers by McKinnon, Son & Co. were that the shippers could ship wheat either to Minneapolis or Duluth, as they saw fit. It was provided, however, that they should draw upon McKinnon, Son & Co. at Minneapolis. The draft was accordingly sent to that firm at Minneapolis. The effect of the whole transaction was that the delivery was made to the consignee named in the bill of lading, and that the carrier had the right to rely upon the bill of lading in making such delivery and that such delivery could be made without the production of the bill of lading.

This action is an action brought for conversion of the car of wheat upon January 20, 1905. If any conversion occurred this conversion occurred in the state of Minnesota, by the delivery of said car of

wheat to McKinnon, Son & Co. at Minneapolis. The action relates solely to the nondelivery of the car of wheat to the Barnum Grain Co. Matters relating solely to the delivery may be determined by the law of the place of delivery and where the question is as to the mode and manner of actual delivery at the place of destination, the lex loci fori applies. 1 Hutchinson, Car. (3d Ed.) § 203, and cases cited. Accordingly this action is to be determined by the law of Minnesota, and the statute applies. A similar statute has been construed in two cases by the supreme court of the state of New York, and it is expressly determined in the Bank of Batavia case that the carrier can limit his responsibility to delivery to the named consignee alone by stamping his bills as "nonnegotiable." Bank v. New York, 106 N. Y. 195; Colgate v. Pennsylvania, 102 N. Y. 120.

A custom prevailing at the place of delivery where both consignee and the holder of the draft with the bill of lading attached reside, to deliver without the production of the bill of lading, goods billed straight, i. e., consigned to the consignee direct, will exonerate the carrier who delivers in accordance with such a custom. Forbes v. Boston, 133 Mass. 154; Bernstein v. New York, 88 N. Y. Supp. 971; 1 Hutchinson, Car. (3d Ed.) § 192; Nashville v. Grayson (Tex.) 93 S. W. 431; Anchor v. Burlington, 102 Iowa, 262; Gates v. Chicago, 42 Neb. 379; National v. Philadelphia, 163 Pa. St. 467.

We certainly do not disagree with the law as laid down in the Ryan and Ratzer cases [90 Minn. 12 and 64 Minn. 245.] In fact we heartily approve and indorse the principles as set forth therein, but we do claim that these cases rest upon an entirely different state of facts. The negotiability of the bills of lading referred to in these cases was not destroyed by the express limitation placed thereon and plainly apparent to any purchaser relying upon such a bill of lading referred to in this case.

*Wilson & Mercer,* for respondent.

Can a railway company at will and without responsibility issue a second bill of lading on the same freight, and then refuse to recognize the first in the hands of an innocent holder to whom it has been hypothecated in the regular course of business? Appellant contends:

1. That the bill of lading was not negotiable. 2. That plaintiff was only the agent of the consignee. 3. That ownership of the wheat was not shown. Respondent contends: 1. That the bill of lading was sufficiently negotiable, or assignable, to vest a special, if not a general, property. 2. That the trial court rightfully refused to find the alleged agency, but that such agency would not alter the legal relations. 3. That sufficient ownership was shown in plaintiff.

The pledge of the bill of lading was a pledge of the wheat sufficient to vest a special, if not general, property in the plaintiff. The bill of lading was the symbol of property. The facts make defendant liable. The words stamped across the face of the bill of lading left it negotiable where the delivery was made, as in this case, to the order of McKinnon, Son & Co. If the words following the word "unless" in red ink stamped on the bill of lading had not been there, then this bill of lading under the Minnesota statute would not have been negotiable by statute, yet by common law; but these words limit the words "nonnegotiable" to cases outside of the consignee and his order. They were evidently put in to comply with section 4231, N. D. Code (1899). The common law is in force in Minnesota irrespective of statute. Midland v. Missouri, 62 Mo. App. 531, 539; National Bank of Commerce v. Chicago, B. & N. R. Co., 44 Minn. 224; Shaw v. Railroad Co., 101 U. S. 557; 26 Am. & Eng. Enc. (2d Ed.) 1108; Pollard v. Reardon, 65 Fed. 848; 4 Am. & Eng. Enc. (2d Ed.) 551; Monroe v. Philadelphia Warehouse Co., 75 Fed. 545. The rule in Minnesota, where the goods are not delivered, is stated in Swedish-Am. Nat. Bank v. Chicago, B. & Q. Ry. Co., 96 Minn. 436. The pledge of the bill, as in this case was good in Minnesota. Security Bank of Minnesota v. Luttgen, 29 Minn. 363; Hoffman & Co. v. Bank of Milwaukee, 12 Wall. 181.

The company delivered the wheat at its peril. Ratzer v. Burlington, C. R. & N. Ry. Co., 64 Minn. 245. In Ryan v. Great Northern Ry. Co., 90 Minn. 12, this court held that as between a carrier of goods and the owner to whom the same were consigned the bill of lading is a reliable symbol of title, and vests in the legitimate holder thereof the right to possession of the property, and that the true owner of property in the possession of a common carrier for transportation may have the same diverted at a station on the route between the shipping point

and the place of destination, while in transit, but may be required to produce the bill of lading or furnish other evidence of the ownership to entitle him to this right. These cases make the law of Minnesota, and as held by the trial court control this case, and are in accord with the general rule.

The transfer of the bill of lading is a delivery of the property. Boatman v. Western (Ga.) 7 S. E. 125; National Bank of Commerce v. Chicago, B. & N. R. Co., supra. And it is immaterial that the words "nonnegotiable" were stamped on the bill. In the case of Means v. Bank of Randall, 146 U. S. 620, it is held: 1. That a bill of lading represents the goods named therein and the transfer of the ownership as well as of the right of possession is made as effectually by the transfer of the bill as it can be by a physical delivery. 2. A bank which makes advances on a bill of lading has a lien to the extent of the advances on the property in the hands of the consignee and can recover from him the proceeds of the property consigned, even though the consignor be indebted to the consignee on general account, and the consignee cannot appropriate the property or its proceeds to his own use in payment of a prior debt. And in general it may be said that a delivery of the bill of lading by the person who, according to the terms of the bill is entitled to the goods, will transfer his title. No indorsement is necessary. American v. Markle, 102 Mo. App. 158; Morse v. Chicago, 73 Iowa, 538.

The carrier should have the bill surrendered. First National v. Northern Pacific, 28 Wash. 439.

The statute does not restrict a transfer to indorsement. Scharff v. Meyer, 133 Mo. 428; Clary v. Tyson (Mo.) 71 S. W. 710.

A custom or usage known to the shipper as to the manner or method of transportation will be binding as a part of the contract when not contrary to its terms. 6 Cyc. 428; Ryan v. Great Northern Ry. Co., supra; First National Bank v. Northern Pacific, supra; Milroy v. Chicago, 98 Iowa, 188.

The receipt of a subsequent bill of lading did not vitiate the original bill of lading in this case. Farmers L. & T. Co. v. Northern Pacific R. Co., 120 Fed. 873; 6 Cyc. 425; Garden Grove v. Humeston, 67 Iowa, 526; The Protection, 102 Fed. 516.

The following opinion was filed on July 26, 1907:

ELLIOTT, J. (after stating the facts as above).

The various assignments of errors are grouped by the appellant so as to raise three questions:

1. It is contended that the bill of lading was not negotiable, and that therefore the railway company had the right to deliver the wheat to the consignee named in the bill of lading without requiring the production of the bill of lading. The nature and effect of a bill of lading, independent of the statute, is well settled in this state. Ratzer v. Burlington, C. R. & N. Ry. Co., 64 Minn. 245, 66 N. W. 988, 58 Am. St. 530; Ryan v. Great Northern Ry. Co., 90 Minn. 12, 95 N. W. 758. The statute (section 7649, G. S. 1894) provides:

> Warehouse receipts, given for any goods, wares and merchandise, grain, flour, produce or other commodity, stored or deposited with any warehouseman, or other person or corporation in this state, or bills of lading, or receipt for the same, when in transit by cars or vessels to any such warehouseman, or other person, shall be negotiable, and may be transferred by indorsement and delivery of such receipt or bill of lading; and any person to whom the said receipt or bill of lading may be transferred, shall be deemed and taken to be the owner of the goods, wares or merchandise therein specified, so as to give security and validity to any lien created on the same, subject to the payment of freight and charges thereon: provided, that all warehouse receipts, or bills of lading, which shall have the words "not negotiable" plainly written or stamped on the face thereof, shall be exempt from the provisions of this act.

In National Bank of Commerce v. Chicago, B. & N. Ry. Co., 44 Minn. 224, 236, 46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. 566, it was held that this statute did not make bills of lading negotiable in the sense of the law merchant. "The statute," said the court, "was not intended to totally change the character of bills of lading, and put them on the footing of bills of exchange, and charge the negotiation of them with the consequences which attend or follow the negotiation of bills or notes. On the contrary, we think the sole object of the

statute was to prescribe the mode of transferring or assigning bills of lading, and to provide that such transfer and delivery of these symbols of property should, for certain purposes, be equivalent to an actual transfer and delivery of the property itself." Shaw v. Railroad Co., 101 U. S. 557, 25 L. Ed. 892; Turner v. Israel, 64 Ark. 244, 41 S. W. 806.

The statute thus merely declares the effect which shall be given to the transfer of a bill of lading. It provides, however, "that all warehouse receipts or bills of lading, which shall have the words 'not negotiable' plainly written or stamped on the face thereof, shall be exempt from the provisions of this act." The bill of lading in question had plainly stamped across its face the words: "Not negotiable unless delivery is to be made to consignee or order." It follows that, according to the express language of the statute, this bill of lading is exempt from the provisions of the statute, and is therefore governed by the general principles of the common law applicable to such instruments. In Midland v. Missouri, 62 Mo. App. 531, the court said: "The words 'not negotiable,' stamped on the face of the bills of lading, in no wise destroyed their assignability. The sole effect of these words was to exempt such bills of lading from the provisions of our statute in relation thereto." The bill of lading in question was assignable by delivery, and, notwithstanding the fact that it was stamped not negotiable, represented the goods which had been shipped. The transfer of the bill did not transfer the contract. It transferred the goods represented by it. Cox v. Central Vermont, 170 Mass. 129; Falkenburg v. Clark, 11 R. I. 278; Munroe v. Philadelphia Warehouse Co. (C. C.) 75 Fed. 545; Pollard v. Reardon, 65 Fed. 848, 13 C. C. A. 171. The case is therefore controlled by the previous decisions of this court. Ratzer v. Burlington, C. R. & N. Ry. Co., 64 Minn. 245, 66 N. W. 988, 58 Am. St. 530; Ryan v. Great Northern Ry. Co., 90 Minn. 12, 95 N. W. 758.

The appellant claims that the Barnum Grain Company was acting merely as the agent of McKinnon, Son & Co., and rests this claim upon a letter written by the Barnum Grain Company to the railway company, in which it is stated that "this car, without any authority from us, was diverted in transit by McKinnon, Son & Co. to Minneapolis; we, as their agents in Duluth, having paid the draft with

the original bill of lading attached for $1,000." The defendant below asked the trial court to find from the stipulated facts that the Barnum Grain Company was acting as the agent of McKinnon, Son & Co., and not otherwise. This the court declined to do, because in its judgment the evidence, as stipulated, did not justify such a finding. Taking the evidence as a whole, and considering it in the light of the entire transaction and the customs of business, of which the court will take judicial notice, we cannot say that the refusal to make this finding was error. The plaintiff had sufficient interest in the wheat to enable it to bring this action.

The order denying a new trial is therefore affirmed.

A petition for reargument having been presented, the following opinion was filed on September 13, 1907:

PER CURIAM.

The petition for a reargument of this case is accompanied by an elaborate brief which we have read with care and interest. It has not, however, shaken our confidence in the correctness of the decision heretofore filed.

The claim that the plaintiff is not the transferee of the bill of lading, but simply the agent of McKinnon, Son & Co. to pay the draft, sell the grain, and account for the proceeds, is not made by the pleadings. The complaint alleged a transfer of the bill of lading to plaintiff, and this allegation was not denied by the answer. Neither the stipulation of facts nor the findings of the trial court disclose any agency of the character claimed by the railway company; on the contrary, the trial court refused to so find. The plaintiff was the agent of McKinnon, Son & Co. to receive the grain, sell it, and account for the proceeds less advances, precisely as any commission house is the agent of a shipper consigning grain to it against which a draft has been drawn on the consignee with bill of lading attached, and not otherwise. In every such case the title to the grain, of which the bill of lading is the symbol, passes to each holder of the draft as security for its payment. In this case the plaintiff paid the draft in reliance upon the bill of lading; that is, the grain represented by it. This conclusion is entirely consistent with the letters upon which the defendant relies. The clause therein quoted by counsel, "You will kindly pay the draft, and, if there is an

overdraft, we will make it good," shows that the plaintiff was to reimburse itself from a sale of the grain in the ordinary course of the business of commission men. It was only the overdraft that McKinnon, Son & Co. promised to pay. After paying the draft, if the grain had actually come to the possession of the plaintiff, could McKinnon, Son & Co. have replevied it without tendering payment of the advances made by plaintiff? It is true that plaintiff in its letter making a claim against defendant uses the words, "We as their agents," but this does not imply that the plaintiff had no title to the grain. On the contrary, the letter expressly states that plaintiff's claim is based on the payment of a draft for $1,000 drawn against car; that is, the wheat in it.

The claim that the statute (G. S. 1894, § 7649) covers the entire subject of bills of lading, including both their transfer and negotiability, and hence repeals the common law and general customs and usages on the subject existing before its enactment, was not made in the original brief. If it is correct, then, by stamping bills of lading "nonnegotiable," all bills of lading so stamped are withdrawn from the provisions of the statute, and, the common law having been repealed, no interest in the property represented by a bill of lading so stamped can be transferred by a delivery of it, whether indorsed or not.

This is a startling and revolutionary proposition. It would permit carriers to stamp all bills of lading "nonnegotiable," and thereby escape all responsibility as to the delivery of the property except to the shipper or consignee, who are not infrequently one and the same person. Such a construction of the statute would, as said in Ratzer v. Burlington, C. R. & N. Ry. Co., 64 Minn. 245, 66 N. W. 988, 58 Am. St. 530, "cause great hardship, revolutionize business methods, and drive all buyers and shippers of small means out of the business, as they could no longer give ready and available security on commodities in transit, and thereby turn their limited capital sufficiently quickly and often to enable them to do much business. This, in turn, would destroy competition, and leave the business in the hands of a few concerns with unlimited capital." The construction contended for cannot be given to the statute unless its language is so clear and mandatory as to leave no other alternative. It is true, as counsel claims, that the legislature intended by the statute relied on to do something more than re-enact the common law, and effect must be given to all of the provi-

sions of the statute. A reference to the original of the statute (Laws 1876, p. 96, c. 86), entitled "An act to regulate the storage of grain," will make its meaning clear. This statute deals primarily with the subject of the storing of grain in elevators and in warehouses, and only incidentally with bills of lading. Section 1 thereof provides that all grain delivered for storage shall constitute a bailment, and not a sale of the property, which is a repeal of the common law in this respect. Section 2 provides for the form and effect of the warehouse or elevator receipt to be given for the grain. Section 3 provides for the surrender of the receipt and the obligation of the warehouseman to redeliver the grain upon tender of all charges for storage and money advanced by the bailee. Section 4 (page 97) provides for an action to recover the grain. Section 5 is the identical section here under consideration, which reads as follows:

> Warehouse receipts, given for any goods, wares and merchandise, grain, flour, produce or other commodity, stored or deposited with any warehouseman, or other person or corporation in this state, or bills of lading, or receipt for the same, when in transit by cars or vessels to any such warehouseman, or other person, shall be negotiable, and may be transferred by indorsement and delivery of such receipt or bill of lading; and any person to whom the said receipt or bill of lading may be transferred, shall be deemed and taken to be the owner of the goods, wares or merchandise therein specified, so as to give security and validity to any lien created on the same, subject to the payment of freight and charges thereon: provided that all warehouse receipts, or bills of leading, which shall have the words "not negotiable" plainly written or stamped on the face thereof, shall be exempt from the provisions of this act.

This statute contemplates that the warehouseman may make advances upon the faith of the grain stored with him in accordance with the existing custom. The statute having changed the relation of the owner of the grain and the warehouseman from that of creditor and debtor to that of bailor and bailee and made the receipts negotiable, it became necessary to provide a method whereby the bailee could protect himself in cases in which advances might be made on the faith of

the property in his hands. Therefore the proviso to the statute was added, so that by stamping the receipts or bills of lading as nonnegotiable each successive holder thereof would take title to the property subject to such advances or other claims of the warehouseman or carrier.

It is clear that the purpose of the proviso was to enable warehousemen and carriers to protect themselves as to any advances or claims they might have and not to affect the assignability of the receipts or bills of lading, or the property therein described. If the proviso is to be given the effect of entirely withdrawing all receipts stamped "nonnegotiable" from the operation of the statute, then all grain stored, for which receipts so stamped are accepted, is a sale, and not a bailment, for the literal reading of the proviso is: "All warehouse receipts or bills of lading which shall have the words 'not negotiable' plainly written or stamped on the face thereof shall be exempt from the provisions of this act"—that is, all the provisions of the act including the provision that grain delivered for storage shall be deemed and treated as a bailment and not a sale of the property, and not simply the provisions of the particular section under consideration.

It is clear that the statute does not affect the assignability of bills of lading by delivery, for the reason that it does not repeal the common law on the subject. If it were otherwise, then the title to property described in a warehouse receipt or a bill of lading could not be assigned by a delivery of the instrument without indorsement, for as to each of such instruments the statute provides that it may be transferred by indorsement and delivery; that is, both indorsement and delivery are essential. And yet this court held in State v. Loomis, 27 Minn. 521, 8 N. W. 758, in a case where the defendant had been convicted of a felony, that title to warehouse receipts might be transferred by delivery without indorsement notwithstanding the statute. It follows that the statute does not affect the assignability of bills of lading although they be stamped "not negotiable," and that all the reasons for requiring the surrender or cancellation of an unstamped bill of lading, if the destination of the property is to be changed in transit, apply to such a bill of lading so stamped, and that this case is ruled by Ratzer v. Burlington, C. R. & N. Ry. Co., supra.

The petition for reargument is therefore denied.