HOUSTON & T. C. R. CO. v. SMITH.
(No. 46.)

(Court of Civil Appeals of Texas. Waco. Jan. 31, 1924.)

1. Trial ⚷350(6)—Failure to submit issues as to exact dates on which goods arrived and shipper directed diversion held erroneous.

In an action for damages from delay in delivering eggs, diverted at the shipper's direction to another destination than that shown by the bill of lading, where the question whether the diversion was directed before the eggs reached the original point of destination was sharply contested, defendant was entitled to a specific finding as to the exact dates on which the shipment arrived at the latter point, and plaintiff directed its diversion, and a special issue submitted in general terms as to whether the order was given before delivery of the eggs at the place originally designated was insufficient.

2. Carriers ⚷176—Initial carrier not liable for damage to shipment in transit from place of delivery, in absence of new contract for shipment elsewhere.

An initial carrier is not liable for damages to a shipment in transit from the place at which delivered, as required by the bill of lading, to a place to which diverted at the shipper's direction, in the absence of a new contract.

3. Trial ⚷352(4)—Submission of issue as to making of contract not pleaded held erroneous.

In a shipper's action against the initial carrier for damages to eggs in transit from the original place of destination to a place to which diverted at plaintiff's direction, submission of an issue as to whether defendant made a contract with plaintiff after the car arrived to ship it to the other place held erroneous, as not supported by any pleading.

4. Contracts ⚷29—Whether facts show contract is for court.

Whether a certain state of facts constitutes a contract is a question of law for the court.

5. Carriers ⚷47(2)—Local freight agent cannot bind company to carry freight beyond line.

Generally a local freight agent of a railroad company has no authority to bind it to carry freight beyond its own line.

6. Carriers ⚷73—Shipper ordering diversion before shipment reaches original destination cannot thereby add to carrier's burdens.

A shipper may have a shipment diverted at any intermediate point through which it passes before reaching its original destination, but cannot thereby add to the carrier's burdens

or require it to do more than comply with a proper and legal demand for diversion.

7. Carriers ⚷73—Not required to notify connecting carriers of desire for diversion.

In the absence of special contract, an initial carrier need not notify its connecting carriers that the shipper or consignee of goods desires them diverted to another destination.

8. Carriers ⚷177(3)—Interstate Commerce Act does not make initial carrier liable for failure to divert shipment.

The Interstate Commerce Act, § 20 (U. S. Comp. St. § 8604a), makes the initial carrier, issuing a bill of lading to transport merchandise from one state to another, liable for all damage in the handling thereof to its original destination, but does not make it liable for damages for not having diverted it or for damages caused by a connecting carrier's handling of, or failure to handle, it after its diversion.

Appeal from District Court, Brazos County; W. C. Davis, Judge.

Action by Allen Smith against the Houston & Texas Central Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, Robert Armstrong, of Bryan, and O. L. Stribling, of Waco, for appellant.

J. Felton Lane, of Hearne, and J. G. Minkert, of Bryan, for appellee.

BARCUS, J. On March 23, 1920, Jones-Brewster & Co. of Houston delivered to appellant 105 cases of eggs, and appellant issued a bill of lading consigning said eggs to Allen Smith (appellee), destination Chicago, Illinois, with the notation on the bill of lading to stop the car at Bryan, Tex., for 295 additional cases of eggs, which were loaded thereon by appellee at Bryan, and the car was transported by appellant to Fort Worth and delivered to its connecting carrier, the Texas & Pacific Railway Company, and by the Texas & Pacific Railway Company transported to St. Louis and delivered to its connecting carrier, the Wabash Railway Company, and by the Wabash Railway Company transported to Chicago, reaching there April 3d.

Appellee in his original petition alleged that appellant contracted and agreed to safely transport and deliver said eggs to appellee in Chicago, Ill., within a reasonable length of time, and that, "by reason of the negligence of the defendant in failing to deliver the eggs in Chicago within a reasonable time and in a marketable condition, the purchaser of the eggs had refused to accept same, and they were by order of the plaintiff diverted to the city of New York, and on May 18, 1920, were delivered to W. T. Pond & Co. in the city of New York." In his supplemental petition the appellee alleged that, prior "to the arrival of said eggs in the city

of Chicago, he ordered and directed said shipment to be .diverted to New York." Appellee alleged that by reason of the delay in the eggs being delivered promptly in New York he had been damaged in the sum of $3,200; being the difference in the value of the eggs in the condition they were when delivered in New York and the value of the eggs if they had been delivered in New York promptly.

Appellant answered by general demurrer, general denial, and for special answer pleaded that under its contract of shipment it received the eggs to be transported by it over its own line to its connecting line at Fort Worth, and that it did so transport same, and that under the contract it was expressly provided that it should not be liable for any damage sustained which did not occur on its own road. Appellant alleged that the eggs were by its connecting carriers delivered in Chicago, and, if its agent did attempt to make a contract to have said eggs transported from Chicago to New York, same was not binding on appellant because its agent at Bryan had no such authority.

The bill of lading issued by appellant contained this provision:

"In issuing this bill of lading, this company [appellant] agrees to transport only over its own line, and, except as otherwise provided by law, acts only as agent with respect to the portion of the route beyond its own line."

The appellee did not allege that he made any contract with appellant to carry the eggs to New York; the only allegation with reference to said matter being that while the eggs were in transit he ordered them diverted to New York. He does not allege to whom he gave said orders, and does not allege that appellant or any one else agreed to divert them, or that he was the owner of or had possession of the original bill of lading at said time; and does not allege the time said order was given, further than that it was given before the eggs reached Chicago.

The cause was submitted to a jury on special issues as follows:

"(1) Did the plaintiff, Allen Smith, direct and order the defendant and its connecting carriers to divert the shipment of eggs from the city of Chicago to the city of New York prior to the arrival of said shipment of eggs at the team track in the city of Chicago?" to which the jury answered, "Yes."

"(2) Did the defendant company, after the car of eggs arrived in the city of Chicago, make and enter into a contract with the plaintiff through its agent at Bryan, Tex., whereby the defendant through its connecting lines agreed to ship said car of eggs from the city of Chicago to the city of New York?" to which the jury answered "Yes."

In response to other issues the jury found that the defendant. and its connecting carriers did not deliver the eggs promptly in New York, and by reason thereof plaintiff was damaged $2,075.20.

[1] Appellant excepted and objected to the court submitting special issue No. 1, because it claimed the evidence was uncontroverted that appellee did not direct the eggs to be diverted until after they had reached Chicago, and because it was not shown that the order for the diversion was made at any intermediate point before the eggs reached Chicago. The appellant requested the court to submit said issue, if at all, in the following form:

"(a) What time, stating month and date, did the shipment of eggs arrive in Chicago?

"(b) What time, stating month and date, did plaintiff direct or request the defendant's agent at Bryan to divert said shipment of eggs to New York?"

[2] The court overruled said objections and refused to submit the issues requested by appellant. The time when the order to divert the shipment from Chicago to New York was given, and the place where said. eggs were at said time, were sharply contested issues of fact, and appellant was entitled to a specific finding as to the exact dates. Special issue No. 1, submitted by the court, was in general terms as to whether the order to divert was given prior to the time the eggs were delivered on the team track in Chicago. The bill of lading issued by appellant consigned the eggs to appellee at Chicago, Ill., and under said contract the only thing that could be required of appellant and its connecting carriers was to deliver said eggs in Chicago, and upon the arrival of same in Chicago all of the obligations imposed upon appellant and its connecting carriers were discharged. If appellee desired same transported from Chicago to New York, it was incumbent upon him to make a new contract, and appellant could not be liable for any damage that might accrue to said shipment after it reached Chicago. Pere Marquette Ry. Co. v. French, 254 U. S. 538, 41 Sup. Ct. 195, 65 L. Ed. 319; Anthony & Jones v. New York Ry. Co., 223 N. Y. 21, 119 N. E. 90, L. R. A. 1918F, 1085; Melbourne v. L. & N. Ry. Co., 88 Ala. 443, 6 South. 762; Hutch. on Carriers (3d Ed.) § 660; Am. & Eng. Enc. of Law (2d Ed.) 214.

[3-5] The appellant objected to the court submitting special issue No. 2, because it authorized the jury to find a legal conclusion as to what constitutes a contract, and because appellee did not plead that appellant made a contract agreeing to ship said eggs from Chicago to New York. We sustain this assignment. Appellee does not allege that appellant made any contract, individually or through its connecting carriers, to ship said eggs from Chicago to New York after the eggs had arrived in Chicago. As to whether a certain state of facts constitutes a con-

tract or not is a question of law to be determined by the court. It was the jury's province to find issues of fact, and on the issues so found it would have been the court's duty to determine whether they constituted a contract. Appellee testified that he requested the local agent of appellant at Bryan to divert the shipment from Chicago to New York. The shipment did not originate in Bryan, and the local agent there did not issue the original bill of lading. As a general rule a local freight agent of a railroad company has no authority to bind the corporation to carry freight beyond its own line, and there are no allegations in plaintiff's petition which would authorize the court in this case in holding that the local agent of appellant at Bryan could make a contract requiring the appellant to transport the eggs from Chicago to New York after they had reached Chicago, the original destination called for in the bill of lading. Gulf, Colorado & Santa Fé Ry. Co. v. Jackson & Edwards, 99 Tex. 343, 89 S. W. 968; M., K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518; Whitley v. Gulf, Colorado & Santa Fé Ry. Co. (Tex. Civ. App.) 183 S. W. 39.

[6, 7] The owner of merchandise has the right to have the shipment diverted at any intermediate point through which the shipment passes before it has reached its original destination (Fort Worth & Denver City Ry. Co. v. Caruthers [Tex. Civ. App.] 157 S. W. 238); but such right of diversion cannot add to the burdens of the carrier or require it to do more than comply with a proper and legal demand therefor (Ryan v. Great Northern Ry. Co., 90 Minn. 12, 95 N. W. 758). As to what is meant by an intermediate point, and as to whether the notice to divert must be given to the carrier which has actual possession of the goods when notice is given, are questions which are not necessary to, and we do not, decide. In the absence of a special contract, the initial carrier is not required to notify its connecting carriers that the owner or consignee of goods desires same diverted. The only effort appellee made to have the shipment diverted was to give notice to the local agent of appellant at Bryan. Appellee does not allege nor attempt to prove that the local agent of appellant was under any obligation to notify the connecting carriers of his desire that the car be diverted before same reached Chicago. When appellee made the request of appellant's agent at Bryan, the shipment had left the road of appellant and appellant is not liable for damages, if any, occasioned by reason of the goods not having been shipped from Chicago to New York. Patton v. Texas & Pacific Ry. Co. (Tex. Civ. App.) 137 S. W. 721 (writ refused); Chicago & G. W. Ry. Co. v. Plano Milling Co. (Tex. Civ. App.) 214 S. W. 833, which was affirmed by the Supreme Court,

Missouri K. & T. R. Co. of Tex. v. Plano Milling Co., 231 S. W. 100.

[8] The federal "Act to Regulate Commerce" (Barnes' Federal Code, art. 7976 [U. S. Comp. St. § 8604a]) makes the initial carrier, when it issues a bill of lading to transport merchandise from one state to another, liable for all of the damage occasioned in the handling of said shipment to its original destination. It does not, however, make the initial carrier liable for damages occasioned by the merchandise not having been diverted or for damages caused by the connecting carriers handling or not handling the merchandise after same has been diverted. Parties are bound only by contracts which they make or those contracts which are imposed upon them by law.

The other questions presented will not likely arise on another trial.

For the errors pointed out, the cause is reversed and remanded.