FT. WORTH & D. C. RY. CO. v. CARUTHERS.

(Court of Civil Appeals of Texas. Amarillo. Dec. 31, 1912. Rehearing Denied May 24, 1913.)

1. CARRIERS (§ 222*)—CARRIERS OF LIVE STOCK—ACTION FOR DAMAGES.

Until delivery to the consignee, there is a right of action in the owner of cattle, the consignor, or one having an interest in them to sue for injuries received by them in shipment through the carrier's negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 952; Dec. Dig. § 222.*]

2. CARRIERS (§ 73*)—CARRIAGE OF LIVE STOCK—SHIPPER'S RIGHT TO DIVERT.

The consignor of live stock has the right to have the destination of his consignment diverted while in transit at any intermediate point through which it passes.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 248, 249; Dec. Dig. § 73.*]

3. CARRIERS (§ 76*)—DELIVERY TO CARRIER—PRESUMPTION OF TITLE IN CONSIGNEE.

The fact that goods were delivered to a carrier for delivery to a named consignee at best raises only a presumption of title in the consignee, subject to rebuttal by proof and notice of actual ownership by another.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 256–271, 363; Dec. Dig. § 76.*]

4. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—ACTION FOR DAMAGES—AFFIRMATIVE INSTRUCTIONS.

In an action for damages to a shipment of cattle by carrying them beyond a certain point over the owner's protest, and after notice of his orders to hold them there, where it appeared that the carrier had notice that plaintiff was the owner and that his agent accompanying the shipment did not claim to be acting for the consignee, and showed that it was acting at the request of the agent, an affirmative charge for defendant was properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

5. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK — ACTION FOR DAMAGES — INSTRUCTIONS.

In an action for damages to shipment of live stock by carrying them beyond a certain point over the protest of the owner, and after notice of his directions to hold them there, where defendant alleged a new contract of shipment made with the owner's agent accompanying the cattle, a charge that the prima facie title was in the consignee and that plaintiff could not recover unless authority for the shipment was given by the consignee was properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

6. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—ACTION FOR DAMAGES—LIABILITY.

In an action against appellant, another railroad, and a stock yards company for wrongfully shipping plaintiff's cattle beyond a certain point over his protest, where it appeared that the other railroad terminated at that point, where they were taken by appellant, and that it had nothing to do with forwarding the cattle, a verdict for such other railroad was properly instructed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

7. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—ACTION FOR DAMAGES—LIABILITY OF STOCK YARD COMPANY.

In an action against appellant railroad company, another railroad, and a stock yard company for wrongfully shipping plaintiff's cattle beyond a certain point without his consent and over his protest, where it appeared that the other railroad, whose line terminated at that point, unloaded them into the pens of the stock yard company, which was the common agent of the roads, and that its manager notified appellant that the shipment was not to be sent forward until the owner could be heard from, and protested against the shipment, a verdict for the stock yard company was properly directed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

8. PRINCIPAL AND AGENT (§ 124*)—AUTHORITY OF AGENT—QUESTION FOR JURY.

In an action against defendant railroad company for wrongfully shipping the plaintiff's cattle beyond a certain point without his consent and over his protest, where defendant al-

leged a written contract with plaintiff's agent accompanying the shipment, *held*, on the evidence, that the question whether the agent was authorized to consent to such shipment forward was for the jury.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 724; Dec. Dig. § 124.*]

9. PRINCIPAL AND AGENT (§ 148*) — UNAUTHORIZED ACTS — KNOWLEDGE BY THIRD PERSON.

Where the agent of the owner of cattle accompanying a shipment consented to their carriage beyond a certain point, contrary to his instructions from the owner, and the defendant railroad knew he was not authorized to ship forward, or that he had instructions forbidding his doing so, it became a party to the wrong and could not justify itself in an action for damages on the ground that it procured the consent of the shipper in charge.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 534–552; Dec. Dig. § 148.*]

10. PRINCIPAL AND AGENT (§ 101*)—AUTHORITY OF CONSIGNOR'S AGENT.

The owner's agent, empowered to make delivery to the carrier, is presumed to have the power necessary to execute the consignment.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 255, 256, 330, 346; Dec. Dig. § 101.*]

11. TRIAL (§ 260*) — REQUESTED CHARGES — CHARGES GIVEN.

Requested charges, sufficiently covered by charges given, were properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260;* Carriers, Cent. Dig. § 1407.]

12. TRIAL (§ 251*)—INSTRUCTIONS—CONFORMITY TO ISSUES.

In an owner's action for damages to a shipment of cattle beyond a certain point over his protest and against his instructions, submitted on the question of his agent's authority to forward the cattle, and defendant's notice as to such authority. a requested charge on the question whether the agent's contract was obtained by duress was properly refused as immaterial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

13. PRINCIPAL AND AGENT (§§ 14, 178*)—EXISTENCE OF AGENCY—NOTICE TO AGENT.

Where a carrier of live stock employed a stock yard company to hold cattle in pens at a certain point while waiting shipment, such company was its agent, and notice to it of the owner's order to hold a shipment was notice to the carrier.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 26–33, 680–684; Dec. Dig. §§ 14, 178.*]

14. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

In an action against a carrier for damage to live stock from a wrongful shipment beyond a certain point without the owner's consent and over his protest, where the question of liability turned upon the question of authority on the part of the plaintiff's agent accompanying the shipment, and knowledge of the defendant as to the owner's instructions to hold the shipment, which issue was presented by appropriate instructions, an instruction submitting the defendant's demand against the agent for immediate payment of all expenses and the issue of duress was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066;* Trial, Cent. Dig. § 538.]

15. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

Error in a charge not reasonably calculated to injure the complaining party will be held harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

16. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—ACTION FOR DAMAGES—ISSUES—CONDITION OF CATTLE.

In an action against a carrier for damages to a shipment of live stock by carrying it beyond a certain point without the owner's consent, evidence *held* sufficient as to the condition of the cattle upon their arrival at their final destination to authorize the jury to consider their market value in the condition in which they arrived.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Eugene Caruthers against the Ft. Worth & Denver City Railway Company and others, in which the Ft. Worth & Denver City Railway Company prayed judgment over against its codefendants in case a judgment was rendered against it. Judgment for plaintiff against the Ft. Worth & Denver City Railway Company, and it appeals. Affirmed.

Turner & Wharton, of Amarillo, and Thompson & Barwise, of Ft. Worth, for appellant. W. Boyce, of Amarillo, and Goree & Turner, of Ft. Worth, for appellee.

HUFF, C. J. The appellee Eugene Caruthers brought suit in the district court of Potter county against the Ft. Worth & Denver City Railway Company, and against the appellees the Pecos & Northwestern Texas Railway Company and the Western Stock Yards Company. The shipment in question was 426 head of steers from Magdalena, N. M., to Ft. Worth, Tex. The cattle were first delivered to the Atchison, Topeka & Santa Fé Railway Company, a common carrier, and in connection with the Eastern Railway Company of New Mexico was operating a line of road from Magdalena, N. M., to Texico, at which point said line of road connected with the Pecos & Northwestern Texas Railway Company. The cattle were transported to Texico and delivered to the Pecos & Northwestern Texas Railway at that point for further transportation. Said last-named company accepted and transported the cattle to Amarillo, Tex., on the 30th day of September, 1908, where they were unloaded into the pens of the Western Stock Yards Company by said last-named carrier. It is alleged, at the time of the arrival of the cattle at Amarillo, plaintiff notified each of the carriers, Pecos & Northwestern Texas Railway Company, Ft. Worth & Denver City Railway Company, and also the Western Stock Yards Company, not to proceed further with the shipment of the cattle out of Amarillo until further instructed by appel-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

lee Caruthers. Notwithstanding these instructions, and over the protest of plaintiff (appellee), on or about the 1st day of October, 1908, and from said point, the Ft. Worth & Denver City Railway Company transported the cattle to Ft. Worth, Tex. That Caruthers had ascertained there was no market at Ft. Worth at that time for that class of cattle prior to their arrival at Amarillo, and that the notification was given in order that he might either terminate the shipment at Amarillo and dispose of said cattle at that place or that he might ship said cattle direct from Amarillo to Kansas City, Mo. Over his protest the cattle were shipped to Ft. Worth, where there was no market, and it became necessary to reship them to Kansas City from that point, and he alleges consequent damages resultant on account of the long voyage, depreciation in flesh, extra feed charges, and extra freight and depreciation in the market value.

The appellant, the Ft. Worth & Denver City Railway Company, answered by general and special exceptions, general denial, and that it had no notice the cattle were not to be shipped to Ft. Worth; that the shipper in charge of the cattle agreed and consented to and directed that the cattle be transported to Ft. Worth; that the shipper executed a written contract for the transportation of the cattle from Amarillo to Ft. Worth; and that, if the cattle were taken from Amarillo to Ft. Worth over plaintiff's protest, it was caused by its codefendants, and prayed for judgment over against its codefendants in case a judgment was rendered against it.

The appellees the Western Stock Yards and Pecos & Northwestern Texas Railway Company answered separately by general denial and by special pleas not necessary to be set out at this time or place. The appellee Caruthers replied that, if the contract of shipment was entered into from Amarillo to Ft. Worth over appellant's line of road, it was procured by duress and without consideration, and, if the shipper signed the same, he did so without authority from Caruthers, of which appellant had full knowledge.

Trial was had before a jury and resulted in a verdict for the appellee Caruthers against the appellant, Ft. Worth & Denver City Railway Company, for $1,631.45, on which judgment was rendered. The trial court instructed a verdict for the appellees the Western Stock Yards Company and the Pecos & Northwestern Texas Railway Company of Texas. It is not believed to be necessary to further state the pleadings or facts at this time, but, upon consideration of the several assignments, such of the pleadings or facts believed to be necessary to an understanding will be set out.

[1-4] The first assignment of error presents the action of the court in the refusal to give charge No. 1 as error. The charge is to the effect that the jury should return a verdict for the appellant, the Ft. Worth & Denver City Railway Company. The error assigned or complained of is based on the proposition that Caruthers, the consignor, billed and shipped the cattle from Magdalena, N. M., to Evans-Montague Commission Company, consignees, at Ft. Worth; and, there being no evidence that the consignee authorized or directed appellant to stop the cattle at Amarillo, it was appellant's duty to transport them to Ft. Worth to the consignee; that the title was prima facie in the consignee. Caruthers alleged he was the owner of the same. The issue presented by appellant is to the effect that it had no notice that the cattle were not to be shipped to Ft. Worth, and that appellee Caruthers' duly authorized agent in charge of the cattle, acting for Caruthers, agreed and consented to and directed appellant to take and transport said cattle to Ft. Worth, the place to which they were originally billed, and acting under Caruthers' instructions, through his agent, they so shipped the cattle.

J. T. Bolton, superintendent of the Western Stock Yards, testified that, under some arrangement between the Western Stock Yards Company and the railroad company in this case, he acted for them in as far as overseeing the loading and unloading of the cattle. "I first saw the shipper in charge of the cattle while the train was unloading. He said Mr. Caruthers told him to hold the cattle until Mr. Caruthers arrived here the next morning. I communicated this to the Denver people next morning before the cattle were loaded. * * * The Denver came down the first time, as I remember, about 5 o'clock in the morning to load these cattle, but did not get them. I told them to send the engine back and not load the cattle. They came back again about 8 o'clock. I had another conversation with Mr. Dobson at the freight depot and again told him what instructions I had about holding the cattle. I was trying to see that the instructions of the shipper and owner were carried out for them to be stopped here, but they went ahead and loaded the cattle. The cattle were shipped out because the shipper, after they explained to him about the necessity of paying freight, etc., here said he was not prepared to pay the freight and let them go on. He consented for them to be shipped on down to Ft. Worth, and they were then shipped out, but that was after I had exercised all control and power I had to prevent them moving the cattle and after the shipper had done all he could to stop them." The testimony shows that Caruthers had permission from the consignee to stop the cattle at Amarillo. It indicates that the employés of appellant purported to be acting on the authority which they claim that Davis, the shipper, gave them to take the cattle to Ft. Worth, and some of them state, if the shipper had notified them he was looking for a message from his employer that he wanted the cattle held, there would

have been no necessity of demanding freight to be paid them. The testimony further shows Davis was the employé of appellee Caruthers. There is nothing in the record to show that the appellant shipped the cattle to Ft. Worth, because there was no notice from the consignee to leave them at Amarillo. The cattle were first billed from Magdalena to Ft. Worth.

It is well established in this state, that the owner of cattle or one having an interest in them may sue for injury received by them in shipment through the negligence of the carrier. Railway Co. v. Smith, 84 Tex. 348, 19 S. W. 509; Railway Co. v. Scott, 4 Tex. Civ. App. 76, 26 S. W. 239; Railway Co. v. Barnett, 26 S. W. 782. Until the delivery is made to the consignee, they are at the risk of the consignor, and the right to recover for injury is in the consignor. Railway Co. v. Scott, supra. The owner has the right to have the destination of his consignment diverted while in transit at any intermediate point through which it passes. Ryan v. Railway Co., 90 Minn. 12, 95 N. W. 758; Hutchinson on Carriers, § 660; Am. & Eng. Enc. of Law, vol. 5, p. 214; Railway Co. v. Day, 20 Ill. 375, 71 Am. Dec. 278. The fact that the cattle were delivered to the carrier consigned to the Evans-Montague Commission Company at best was only a presumption of title in the consignee, which was subject to rebuttal by proof and notice. In this case the evidence is undisputed that the cattle were owned by Caruthers. Appellant had notice that he was such owner and at no time claimed to be acting for the consignee in shipping the cattle, but it alleges and proves that it was acting at the request of Caruthers' agent in charge of the cattle. Cyc. vol. 6, 433–436; Railway Co. v. Laws, 125 S. W. 973. Before the cattle had in fact been delivered to appellant, unless placing them in the Western Stock Yards pens was a delivery to appellant, it was demanding the cattle over the stock yards manager's protest, and against his wishes and that of the shipper, if their testimony is to be believed. We think the court correctly refused the charge.

[5] Appellant's second assignment complains at the refusal of the court to give special instruction No. 8, which is to the effect that the prima facie title was in the consignee, and appellee Caruthers could not recover unless authority was given by the consignee. This charge substantially instructs a verdict against Caruthers. Under the issues in this case and the testimony, we think the court properly refused the charge. As seen, the testimony is uncontroverted that the cattle belonged to Caruthers and that the shipper was his agent and employé to accompany the cattle. Appellant alleged that it made a new contract of shipment from Amarillo to Ft. Worth over its line of road, with Davis as agent for Caruthers. It is also shown by appellant's testimony that the shipper, Davis, was acting for Caruthers, and

consented to ship the cattle to Ft. Worth. Issue was joined on this question. What has been said under the first assignment will apply to this assignment.

[6, 7] By the third assignment the appellant complains at the action of the court in instructing a verdict for the Western Stock Yards Company and for the Pecos & Northwestern Texas Railway Company, and by the fourth assignment complains at the action of the court in refusing special charge No 13, to the effect that if the cattle were transported from Amarillo to Ft. Worth without the consent of plaintiff's shipper, and that if the Western Stock Yards Company or the Pecos & Northwestern Texas Railway Company helped to and were concerned directly or proximately in taking, or causing said cattle to be taken, by reason of which plaintiff sustained damage, then this defendant (appellant) would not be liable for such damage that might have been caused proximately by its codefendants; and, if the entire damage was so caused, then to return a verdict for appellant. This was an action against all three of the corporations for wrongfully taking and shipping Caruthers' cattle from Amarillo to Ft. Worth, without his consent and over his protest. This case was tried on that issue and no other. The appellant in this case pleaded over against its codefendants and alleged generally that if the cattle were so transported it was done by its codefendants, one or both of them, and therefore claims judgment over against its codefendants for any sum found against appellant. The facts show that the Pecos & Northwestern Texas Railway Company terminates at Amarillo, where the cattle were taken charge of by the appellant. There is no fact that shows that the Pecos & Northwestern Texas Railway Company had anything to do with shipping the cattle on to Ft. Worth, over the protest of the shipper. It had complied with its contract when it delivered the cattle at Amarillo. It further appears from the evidence that the Western Stock Yards Company was the common agent of both railroads in holding the cattle at the shipping pens at Amarillo, as neither railroad had facilities for so holding them. The cattle were unloaded into these pens from the Pecos & Northwestern Texas Railway Company cars. Mr. White appears to be the common agent of these two roads at Amarillo. The evidence we do not think shows any negligent act on the part of the Pecos & Northwestern Texas Railway in transporting the cattle from Amarillo to Ft. Worth over the shipper's protest. It was therefore, in so far as this company was concerned, altogether proper to instruct a verdict for it. The testimony, as set out by appellant, shows that the manager of the Western Stock Yards Company notified appellant that the shipper did not want to ship to Ft. Worth until the owner of the cattle, Caruthers, could be heard from, and it further shows that he pro-

tested unto the last against appellant taking and shipping the cattle to Ft. Worth. The stock yards did not resort to force, it is true, to hold them, and we do not regard it as having been necessary for it to do so in order to protect its rights. But it was the agent only of appellant in the transportation of the cattle. We do not see where it was guilty of any active negligence which would render it liable to the owner of the cattle or to appellant. On the contrary, all the evidence shows it was trying to protect the shipper from the wrongful transportation of the cattle to Ft. Worth. The only question was whether the shipper, under proper authority, consented to the shipment of the cattle to Ft. Worth, and this was submitted to the jury. We therefore overrule the third and fourth assignments.

[8, 9] Complaint is made of the fifth paragraph of the court's charge, which is as follows: "Bearing in mind the foregoing instructions, if you believe from a preponderance of the testimony that plaintiff was the owner of the shipment of cattle described in his petition, and that before it left Magdalena, N. M., he gave instructions to his agent and shipper, R. B. Davis, accompanying said cattle on their journey, to stop the same at Amarillo until he (Davis) received further instructions, or until he (plaintiff) should arrive at Amarillo, and you believe that, before said cattle were loaded on the cars of the defendants the Ft. Worth & Denver City Railway Company, said shipper, Davis, communicated his instructions to T. W. White, the station agent of said defendant railway company at Amarillo, and that instructions to said shipper were not changed, modified, or revoked by plaintiff, and that he (plaintiff) had not yet arrived in Amarillo, and you further believe from the testimony that the said station agent, White, in violation of said instructions, caused the said cattle to be loaded on the said defendant's cars and shipped to Ft. Worth, without plaintiff's consent, and you further believe that plaintiff would, upon his arrival at Amarillo, have terminated said shipment at said point," etc.

The sixth paragraph is as follows: "If you believe from the evidence that after being notified of the plaintiff's instructions to stop and hold said cattle at Amarillo until he gave further instructions, or he arrived in person at said point, the said agent of the defendant the Ft. Worth & Denver City Railway Company at Amarillo demanded of said shipper, R. B. Davis, the immediate payment of all expenses or freight charges against said shipment, without allowing the owner a reasonable opportunity under all the circumstances of complying with such demand, and that such agent or agents of defendant informed the plaintiff's said shipper that, unless such expenses and freight charges were immediately paid them, they would load said cattle and transport them on to Ft. Worth, and such shipper believed such state-

ments, and under such circumstances consented, but without authority from plaintiff, to the loading and shipment of said cattle on to Ft. Worth, or you further believe from all the facts, circumstances, and evidence before you that said defendant's station agent, T. W. White, knew, or ought reasonably to have known, that such shipper was without authority to give such consent for the plaintiff, then said defendant would not be justified in causing said cattle to be loaded and shipped to Ft. Worth, and would be liable to plaintiff for his damages, if you find he was damaged under the next preceding paragraph of this charge. But the shipper, R. B. Davis, had the apparent authority to represent the owner of the cattle and to give instructions concerning their transportation to Ft. Worth, and his consent would bind the plaintiff unless you should find and believe from the evidence that such consent to load and ship the cattle to Ft. Worth was given under what seemed to him to be an imperative demand for immediate payment of all the expenses and freight charges against the cattle, or that the agent of the defendant railway company dealing with him knew, or ought from the facts and circumstances to have reasonably known, that the said shipper had no authority to give such consent."

It is asserted the fifth paragraph ignored the fact that the shipper, Davis, could and did give his consent to the shipment of the cattle on to Ft. Worth. The cause of action alleged is that appellant was notified that the shipper was not to proceed further than Amarillo with the cattle, but over such notice and directions it persisted in shipping the cattle. The appellant replied that Caruthers' authorized and acting agent in charge of the cattle agreed and consented to and directed appellant to transport the cattle to Ft. Worth. Appellee replied if there was any such agreement or direction given it was without his consent and knowledge, and with full knowledge on the part of appellant of the appellee's instructions, directions, and desires of said shipment to be stopped at Amarillo. There is no question from the testimony that appellant had notice that it was the desire of appellee to stop the cattle at Amarillo. The testimony shows that the manager of the stock yards was told by the shipper that he did not want the cattle shipped out, and that Caruthers told him to hold the cattle until his arrival the next afternoon. The superintendent further testified he communicated this to the Ft. Worth & Denver City people the next morning before the cattle were loaded out. Caruthers testified he instructed the shipper to hold the cattle at Amarillo until his arrival. White, the agent, testified when he got to the office the crew that were called to get the cattle came back and said the man in charge would not allow the stock to be reloaded. The man told him Caruthers, "the owner of the stock, told him to stay at Am-

arillo, or that he would hear from Caruthers at Amarillo whether he would stop at Amarillo or go on to Ft. Worth as they were billed." The shipper said Caruthers should have arrived on the evening train the day before. White asked him what he proposed to do, and after studying a while said it had been over 12 hours since their arrival, and he had better let them go, and that he had not heard from Caruthers and said they could go on as billed. The testimony further shows by other witnesses that the employés of appellant claimed the rest time was up for the cattle, and that if the shipper wanted to keep the cattle he would have to pay the freight and rebill the cattle. The shipper denies giving consent to loading and shipping the cattle to Ft. Worth, but says he told the employés he was to hold the cattle until he heard from Caruthers. It will be noted in the fifth paragraph that the jury were instructed that if the shipper was instructed "to stop the same (cattle) at Amarillo until he (Davis) received further instructions, or until he (plaintiff) arrived at Amarillo," and that such instructions were communicated to the appellant, and that such instructions were unrevoked, and that appellant loaded out and transported the cattle without appellee's consent. The facts are practically undisputed that the cattle were to be stopped at Amarillo, and that they were not to be moved therefrom until Caruthers arrived or until the shipper heard from him. Appellant knew of this order from the owner, and, when it and the shipper shipped the cattle, it knew that it was doing so without authority from the owner and over his direction. It was charged with full knowledge of the scope of the agent's authority. It was at least a proper question for the jury, and if they found that the shipper consented to the shipment of the cattle over his instructions from the owner, and that appellant knew he was not authorized to do so, or if he knew his instructions forbade his doing so, then it became a party to the wrong and cannot justify itself on the ground that it procured the consent of the agent in charge of the cattle. If the evidence made it clear that the shipper had authority to deliver the cattle for appellant, or that appellant did not know that they were to be held at Amarillo, then it might be contended that the appellant was warranted in presuming the shipper had authority to reship the cattle. Railway Co. v. White, 32 S. W. 322.

[10] It is true, as a general rule, the consignor as the agent to whom the owner intrusted his property to be delivered to the carrier must be regarded as having authority to stipulate for the terms of transportation. Having the power to make the delivery, he is presumed to have the power necessary to carry it into effect, and that the carrier is authorized to act upon this presumption in contracting with the agent, and need not inquire into his authority to make a particular shipment. Ryan v. Railway Company, 65 Tex. 13, 57 Am. Rep. 589. As seen in this case, the shipper had no authority to deliver the cattle to appellant, and the facts show that appellant knew his instruction. It knew the shipper had not heard from the owner and that he had not arrived. It knew the shipper's instructions were to stop the cattle at Amarillo. With this knowledge, there was no presumption to be indulged that he had authority to deliver the cattle for transportation to Ft. Worth. If the jury found the fact that appellant procured delivery from the shipper, his consent to transport the cattle would not under such circumstances relieve it from liability from its and the shipper's wrong and violation of the instructions. We do not think there was error in paragraph 5 as urged in this court. If the charge was not full enough, we think the sixth paragraph cured the omission. The jury was plainly told: "But the shipper, R. B. Davis, had apparent authority to represent the owner of the cattle and to give instructions concerning their transportation to Ft. Worth, and his consent would bind the plaintiff unless you should find from the evidence * * * that the agent of the defendant railway company dealing with him knew, or ought from all the facts and circumstances to have reasonably known, that the said shipper had no authority to give such consent." This charge clearly presented the law as to the presumption upon which the carrier could rely. It would be giving greater extent to a mere presumption than we think intended by the rule to say, where the carrier knew that the shipper did not have the authority to deliver and transport cattle, that yet, in the face of such knowledge, it could rely on a presumption which is only to be indulged in the absence of facts to the contrary. This latter charge is not contradictory of paragraph 5, but as we view it is entirely consistent with that paragraph. We therefore overrule assignments Nos. 5 and 6.

[11] The seventh assignment complains at the action of the court in refusing specially requested charge No. 3. We think this charge just above quoted sufficiently covered the issue presented. The language is not the same, but it practically presents the issue requested. A jury would not probably misunderstand the issue presented by the court's main charge, and there was no necessity to repeat it by giving the requested instruction.

[12] The eighth assignment complains at the action of the court in refusing the tenth special instruction requested by appellant. As we understand the issues presented by the court to the jury, he only authorized a recovery by the appellee in case they found that the shipper had no authority to ship the cattle to Ft. Forth, and that appellant knew that he had no such authority. The question does not appear to have been presented on

the theory that the contract of shipment was obtained by duress. But the question is presented only in connection with the question of authority or not, and notice by appellant of such authority. If he did not have the power to make the contract of shipment for the owner of the cattle, then it would become immaterial how the contract was obtained. The issue presented by special instruction No. 10 was immaterial and could not have affected the rights of the parties, whatever the jury may have found with reference thereto.

We overrule the ninth assignment to the refusal of the twenty-eighth requested instruction for the reason above given under the seventh and eighth assignments.

We also overrule the tenth assignment of error. We do not think the specially requested charge was relevant or germane to the issue of the case, as tried and presented.

[13] Complaint is made at the refusal to give instruction No. 9 in the eleventh assignment. This charge is to the effect that if the appellee or the shipper gave notice to the Pecos & Northwestern Texas Railway of Texas, or the Western Stock Yards Comjany, to hold the cattle at Amarillo, the jury should not consider the same as to the appellant unless communicated to it. The court did give special instruction No. 5 on page 43 of the transcript with reference to notice sent by a message to the Pecos & Northwestern Texas Railway of Texas, at Amarillo. We are inclined to think, from the facts in this case, that the Western Stock Yards Company should be treated as appellant's agent in holding the cattle at Amarillo. The evidence appears to be undisputed that the two roads had no stock pens at Amarillo and employed the stock yards company to hold cattle for them at that point. The cattle were unloaded into the stock yards before appellant loaded them out for Ft. Worth. We do not think by employing an independent agency a carrier can shift its responsibility as such. We therefore overrule this assignment.

[14] The twelfth, thirteenth, and fourteenth assignments complain of that part of the charge in paragraph 6 submitting the demand of the immediate payment of all expenses and freight charges against said shipment from the shipper by appellant's employés, because it is asserted there was no pleading or evidence authorizing the court to submit the question of demand for immediate payment of expenses and freight charges. The evidence by Bolton, superintendent of the stock yards, is to the effect that appellant's employés claimed that the time for rest of the cattle was up, and that if the freight charges were not paid they would ship them out, and that the shipper stated he did not have the money to pay the freight and let them go, and the shipper's testimony is to the effect that the employés of the company stated that some one would have to pay the expense of the crew in charge of the train upon which the cattle were shipped, while being held at Amarillo. We are not prepared to say there was no evidence under which the issue could be presented, but, as we view the case, the question, as presented, was not one likely to injure the rights of appellant, as the case was made to turn upon the question of authority on the part of the shipper and knowledge on the part of appellant as to the appellee Caruthers' instructions and wishes with reference to holding the cattle at Amarillo. This issue is presented in both paragraphs Nos. 5 and 6 of the court's charge.

[15] The fifteenth assignment is overruled for the reason we do not think the charge, if error in the particulars complained of, was reasonably calculated to injure appellant.

[16] By the sixteenth assignment of error it is urged that the court erred in authorizing the jury to consider the market value of the cattle at Kansas City upon their arrival there in the condition in which they arrived, because it is asserted there was no evidence of the condition of the cattle upon their arrival. The evidence is to the effect that the cattle were on the road 24 hours longer going by Ft. Worth to Kansas City than they would have been by going direct from Amarillo; that they would lose about 20 pounds per head by reason of the extra time. The longer they are on the cars the more they are rubbed, damaged, and bruised. Depreciation in the market value of the cattle because of the additional confinement of 24 hours was about 25 cents per hundred pounds. The witnesses who testified on this point said that long confinement in the car or in shipment affects the appearance of the cattle and affects their selling price. We think there was sufficient testimony as to the condition of the cattle upon their arrival at Kansas City to submit the issue to the jury.

The seventeenth and eighteenth assignments are overruled. We do not think under the objections urged that the court committed reversible error.

We have gone over the assignments and record as carefully as we could, and, while perhaps the trial court has committed some errors in the trial of the case, they are such, in most instances, almost unavoidable in a heated contest over the multitudinous issues presented. But, as we view them, they are such as ought not reverse the case or which require at our hands a more extended notice than has been given. Upon a review of the whole case, we believe a substantially fair trial has been had and the rights of the respective parties sufficiently guarded.

There is no such error presented as we view the case which will require a reversal at our hands, and it is therefore affirmed.

HENDRICKS, J., not sitting.