## PANHANDLE & S. F. RY. CO. v. MAYHUGH. (No. 1862.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 23, 1921. Rehearing Denied Jan. 4, 1922.)

1. **Carriers ⚖️230(3)—Holding sheep in cars overnight and forwarding on first regular train not negligence as matter of law.**

It cannot be said, as a matter of law, that a carrier was not negligent in keeping sheep in cars overnight and forwarding them on the first regular train leaving after they were loaded.

### On Motion for Rehearing.

2. **Carriers ⚖️228(5)—Evidence held to warrant finding that employees of one railroad were agents of another in loading sheep.**

In an action against a carrier for delay in loading and shipping sheep, which were loaded on the cars by employees of another railroad who used the same yards and pens, evidence *held* sufficient to sustain a presumed finding by the trial judge that the relation of principal and agent existed between defendant carrier and the employees of the other railroad; the issue not having been submitted to the jury.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Action by L. T. Mayhugh against the Panhandle & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, Madden, Trulove, Ryburn & Pipkin, of Amarillo, and E. Graham, of Plainview, for appellant.

W. W. Kirk, of Plainview, for appellee.

HALL, J. The appellee sued the appellant for alleged damages to a shipment of 1,800 sheep over the appellant's line of railway from Sweetwater, Tex., to Plainview, Tex. He alleges negligent delay in loading the sheep at Sweetwater and delay in forwarding from Sweetwater. It will not be necessary to further state the substance of the pleadings. It appears that appellee ordered cars for this shipment to be at Sweetwater on November 1st, and later changed his order, requesting that the cars be there on the 5th. He drove his sheep into the loading pens on the morning of the 5th, but in counting them found that there were about 400 missing. These were not found and placed in the pens ready for shipment until the morning of November 6th. According to appellee's testimony he notified the defendant's employees at Sweetwater, at 10 o'clock, November 6th, that his sheep were ready for shipment, and was told that defendant would not be ready to load them before 4 o'clock p. m.; that he offered his sheep for loading at that hour. On account of several delays, caused by an incoming passenger train and the use of the switch engine in connection with other matters about the yard, the defendant did not finish loading the 12 cars of sheep until about 9:30 o'clock p. m. of November 6th; that about this time a shipment of cattle arrived in the yards and they were unloaded for feed, water, and rest. The sheep were held upon the cars and did not leave Sweetwater until the morning of the 7th, about 5 o'clock, and arrived at Plainview at 5 p. m. the same day. It is shown that there was little or no unusual delay after the train left Sweetwater.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Under several propositions appellant insists that the court should have peremptorily directed a verdict in its favor because no longer time than usual was consumed in loading the sheep on the cars at Sweetwater. It is not insisted by appellee that much more than ordinary time was consumed in loading after it was commenced. He contends that defendant should have commenced loading at 10 o'clock on the morning of the 6th, and did not begin until seven hours later, and that there was further delay in holding the sheep in the cars all night. Appellee admits that part of his sheep were in the pens on the 5th. About 400 of them, it seems, were in a stalk field adjoining the pens over night, and they all had what water they would drink from the time they were placed in the pens until they were loaded on the cars. Under these facts the court could not have properly directed a verdict for the defendant. It may be inferred from the testimony that the appellee suffered some damage by reason of the fact that the sheep had no feed during the two days, November 5th and 6th, but there is nothing in the record to show that the jury did not take this into consideration in estimating the total amount of damages awarded appellee. It seems to be appellant's contention that, if it forwarded sheep on the first regular train leaving Sweetwater after they were loaded, it has not, as a matter of law, been guilty of negligence in holding them upon the cars over night. We do not understand this to be the rule. Under all the circumstances, it may have been the duty of appellant to forward the sheep immediately after they were loaded. Under such circumstances shippers are not necessarily bound by the schedules of carriers. Whether it was the duty of appellee to send the 12 cars of sheep on, or whether or not it was negligent in holding them, to be forwarded with the several cars of cattle the next morning, simply raises an issue of fact for the jury. St. L., S. F. Ry. Co. v. Armstrong, 166 S. W. 366; Southern Kansas Ry. Co. v. Hughey, 182 S. W. 362.

According to appellee's testimony, if the sheep had been forwarded at once, they would have reached Plainview before noon of the following day, and could have been unloaded and in some degree protected from the rain and snow from which they suffered upon being unloaded at destination on the night of November 7th. The jury could take all of these matters into consideration in determining the question of negligence, and we see no grounds for setting their finding aside. Nothing was awarded appellee by reason of the 30 sheep that died en route and after they reached their destination, and the total damages assessed is limited to 15 cents per head for the entire lot. Under these facts the verdict is not excessive. The evidence is conflicting upon the physical condition of the sheep. Appellee testified that he had cut out all the weak, sick, and old ones before shipping, and that only a very few were slightly affected with cold. Some of appellant's employees testified that a great many of them were too sick for shipment. This conflict was settled by the verdict of the jury. There is nothing in the record to show that the jury did not take into consideration such damages as may have resulted by the sheep becoming wet and chilled in transit, and we must presume that such damage, if any, like the damages which may have resulted from holding the sheep in the pens before they were tendered for shipment, was taken into consideraion in estimating the total amount of damages suffered.

We find no reversible error, and the judgment is affirmed.

### On Motion for Rehearing.

[2] The principal contention by appellant on motion for rehearing is that, because it was shown without controversy that the appellee penned his sheep in stock pens operated by the Gulf, Colorado & Santa Fé Railway Company, and because it is further shown that the sheep were loaded by a Gulf, Colorado & Santa Fé crew, and no unreasonable delay is shown in transit, the judgment against appellant company is unsupported by the evidence. The Gulf, Colorado & Santa Fé Railway Company was not made a party defendant, and the appellant's contention must be sustained unless the Gulf, Colorado & Santa Fé and its employees should be held to be the agents of the appellant. R. C. Brown, yard clerk of the Gulf, Colorado & Santa Fé Railway, testified, in part, as follows:

"It was the Gulf, Colorado & Santa Fé engine and crew that went out to load these sheep. These stock pens are on the Gulf, Colorado & Santa Fé leg of the Y out on the east side. The Gulf, Colorado & Santa Fé switch crew makes up the Panhandle & Santa Fé train. My understanding is that the Panhandle & Santa Fé gets hold of a train—that their railroad is over after they pass the interlock. The same engine makes them up in our yard; the same switch engine, the Gulf, Colorado & Santa Fé, handle the cattle over to the pens and put them in the stock pens. These cattle were put on the same train that was going out with these sheep. * * * The Gulf, Colorado & Santa Fé and Panhandle & Santa Fé use the same pens, and all live stock coming in and being unloaded from both roads and being loaded out on either or both roads are unloaded and loaded at these pens. The Gulf, Colorado men handle for both roads—handle the Panhandle & Santa Fé shipments of live stock. I don't know that they are agents. They attend to business for both roads. I don't know just how they handle their business, but we are under the supervision of the Gulf, Colorado. I don't work under the supervision of the Panhandle & Santa Fé at all. The Gulf, Colorado crews handle live stock when it is shipped in out to the stock pens and back, and the Gulf,

Colorado crews make up the trains in the Sweetwater yards. The Panhandle & Santa Fé crews take their trains in the yard; they get on the train in the yard. The chief dispatcher of the Panhandle & Santa Fé is at Slaton. Any messages about the handling of live stock passing over the Panhandle & Santa Fé come to the agent or to the yardmaster, the Gulf, Colorado men."

The issue of the agency of the Gulf, Colorado & Santa Fé, and its employees for the appellant in the transaction out of which the suit has grown was not submitted to the jury, but the evidence quoted above is sufficient to sustain a presumed finding by the trial judge that the relation of principal and agent did exist and to support the judgment. This question was decided by this court in Fort Worth & Denver City Railway Co. v. Caruthers, 157 S. W. 238, 244.

We think the record is clear that the appellee tendered his sheep for loading between 9 :30 and 10 :00 o'clock on the morning of November 6th, and supports the finding of the jury, though there is conflicting evidence upon this point. The original opinion does not state, as a matter of law, that it was the duty of appellant to forward the sheep immediately after they were loaded. Appellant made no effort to show that it had no other facilities for forwarding the shipment within a reasonable time. Neither is there anything in the opinion which denies the rule that a railway company ordinarily has the right to make reasonable schedules for the operation of its freight trains.

The motion is overruled.