Riverside Portland Cement Co. v. von Hamm-Young, 21 Haw. 727.

# RIVERSIDE PORTLAND CEMENT COMPANY v. THE VON HAMM-YOUNG COMPANY, LIMITED.

### ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

# RIVERSIDE PORTLAND CEMENT COMPANY v. ALLEN & ROBINSON, LIMITED.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED OCTOBER 30, 1913.        DECIDED NOVEMBER 12, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

CARRIERS—*bill of lading—presumption of ownership.*

The presumption of ownership of property arising from the possession of a bill of lading indorsed to the order of the holder may be explained or rebutted by other evidence showing where the real ownership lies.

ESTOPPEL—*bill of lading—warehouse receipt.*

The plaintiff being the owner of certain cement in Los Angeles shipped the same by rail to San Pedro, the bill of lading therefor being indorsed to the order of T, a special agent of plaintiff for the sale of the cement in Honolulu. On arrival of the cement in Honolulu it was stored in warehouses in the name of T, who, by the terms of the agency agreement, was to assume all expenses of unloading, storing and marketing the cement. T bartered the cement for a ship. Held, that the plaintiff, in an action of trover, was not estopped to assert its title to the cement as against the defendants who received certain of the cement or proceeds of sales thereof crediting same against antecedent debts of the former owner of the ship.

OPINION OF THE COURT BY ROBERTSON, C.J.

These are actions of trover to recover the value of certain cement alleged to have belonged to the plaintiff and to have been converted by the defendants. Judgment was for the defendant in each case. The cases were heard together, jury waived, and the following statement of the general facts is taken from the decision of the court. With the exception of

the first finding which we have corrected in parenthesis there was testimony tending to support these findings: "The plaintiff being the owner of a certain two thousand barrels of cement in Los Angeles, California, shipped such cement to its own order to San Pedro, California." (The testimony was uncontradicted that the cement was consigned to the "Crescent Wharf and Warehouse Company, San Pedro, order of A. W. E. Thompson.") "This was a railway bill of lading and had nothing to do with any water shipment. Prior thereto, on April 12th, 1910, the plaintiff had entered into a written agreement with one A. W. E. Thompson whereby Thompson was made the agent of the plaintiff to sell the said two thousand barrels of cement under a special and limited agency. This agreement provided that the plaintiff should land the cement on the docks in Honolulu; that the plaintiff would 'endorse the bill of lading or such other evidence of shipment as is used in the premises to the order of A. W. E. Thompson, agent;' and that the agent should thereupon assume all expenses of unloading, hauling, handling, insurance, marketing, selling, etc., of the cement. The agent was likewise limited in his method of selling to a price 'not less than $2.75 per barrel, lawful money of the United States, and on a credit of not greater than sixty days after delivery.' The agreement provides further that the agent upon making sales shall immediately remit the money and should render monthly accounts to the principal. Up to July 28th, 1910, apparently only two hundred barrels of cement had been disposed of. On that date (or July 29th) an agreement was entered into between Thompson, the Miller Salvage Company, Limited, and Guy L. Duckworth, Trustee. By this agreement it appears that the President of the Salvage Company, Captain F. C. Miller, had been authorized to sell the Bark 'Alden Besse;' that pursuant to that power he by this agreement was to sell the bark to Thompson and in consideration therefor Thompson was to hand over ('sell and deliver,' as the agreement states it) the remaining eighteen hundred barrels of cement. Duckworth

was to act as 'Trustee' of the parties; was to hold the 'Alden Besse' until payment for her had been made by the sale by such trustee of the cement at $2.65 per barrel; out of the net proceeds of such sales to pay the Miller Salvage Company $2380.00; to pay certain notes given by C. F. Miller to J. W. McCauley for $1500.00, the payment of which was to release certain pumps held in a warehouse in Los Angeles, and upon the payment thereof to hand the pumps over to the said C. F. Miller. The surplus over and above the $2380.00 received by the trustee Duckworth was to be handed over to Thompson. Meanwhile the cement in question was in warehouses in Honolulu under the name of Thompson. Upon execution of the tri-party agreement Thompson notified the warehouses to deliver the cement only on the order of Duckworth. After the execution of the tri-party agreement the following transactions occurred: C. F. Miller, or the Miller Salvage Company, was indebted to each of the defendants herein. Miller went to the von Hamm-Young Company, Limited, and asked them to take cement for their claim against him. After some discussion it was agreed between them that the von Hamm-Young Company, Limited, should sell as much of the cement as they could and credit the amounts received from the sale of the same to the Miller account. To Allen & Robinson the Salvage Company or Miller was likewise indebted and to it was sold 750 barrels of cement for $1875.00 and that amount was credited to the account of the Salvage Company. The accounts of Allen & Robinson show that of this amount 1950 bags were sold for $1412.93 and that amount credited to the account of the Salvage Company. The remainder of the cement being damaged was not received by Allen & Robinson. The price for which the cement was sold to the defendants was $2.50 per barrel, with a supposed rebate of ten cents a bag for the return of the bags, making a net price of $2.10 per barrel (there being four bags to the barrel). This was below the price at which Thompson had

been authorized to sell, that price being originally $2.75 per barrel and later reduced by cable to $2.45 per barrel."

The apparent inconsistency between the statements that it was agreed that "the von Hamm-Young Company, Limited, should sell as much of the cement as they could and credit the amounts received from the sale of the same to the Miller account" and that "the cement was sold to the defendants," is a reflection from the testimony in the von Hamm-Young Company's case. The managing director of that company who was called as a witness for the plaintiff testified variously that "the matter was referred to me to pass on, whether we should make —take—sell any of that cement or not, and I authorized it;" that he authorized the "purchase" of the cement by his company; that "we didn't take over any cement;" that his company would "help Captain Miller to sell it;" that it "would simply find a purchaser and then seek a delivery direct from the warehouse;" and that on each occasion when a sale was made Duckworth "billed" the cement to the defendant. The court said that "the von Hamm-Young Company agreed to take the offer in this way, that if it found purchasers for the cement it would give orders therefor on Miller, who was to fill the orders from the warehouse, and the amount received from the sale of the cement was to be credited to the indebtedness of Miller or the Miller Salvage Company. In this way a large number of barrels of cement were sold by the von Hamm-Young Company and the money received therefor was transferred to the Miller accounts. This in my opinion does not constitute a possession of the property by the von Hamm-Young Company, at any time, either an actual or constructive possession." It did not clearly appear whether under the arrangement as made Miller or Duckworth were bound to honor the orders of the defendant company, and there was no express finding that the cement was not bought by or billed to the company; nor that the defendant did not claim or exercise any domnion over the cement. There was some slight evidence that the defendant company had cart-

NOVEMBER, 1913. 731

Riverside Portland Cement Co. v. von Hamm-Young, 21 Haw. 727.

ed and delivered some of the cement but no reference was made to that in the decision. The findings were inconclusive. Under these circumstances it is difficult for this court to say whether the view which the court below seems to have taken, that the plaintiff had failed to show a conversion of any of the cement by the von Hamm-Young Company was supported by the evidence unless we go deeper into the question than we deem it necessary to do at this time. The testimony in several respects was vague and unsatisfactory, and a reading of the transcript gives us the impression that the facts were not brought out as clearly and in such detail as they might have been, and, as it may be expected, will be on another trial if one be had.

Upon undisputed evidence it seems clear to us that Duckworth was not a *bona fide* purchaser, or a purchaser at all, of the cement. For the convenience of Thompson and Miller he was made their trustee or agent. He claimed no beneficial interest in any of the property the title to which was agreed to be put in his name by the instrument dated July 29, 1910, and purported to have been given him by the bill of sale which was made by the other parties agreeably to the terms of that instrument. He appears to have taken no steps to sell the cement, the active parties in this connection being Thompson and Miller, principally the latter. Allen & Robinson, Limited, purchased 750 barrels through Miller (it being billed to that company, not by Duckworth, but by the Miller Salvage Company), and credited the amount of the purchase price against the antecedent debts of Miller and the Miller Salvage Company.

The circuit court held further that the plaintiff had proved its claim of ownership of the cement; that Thompson was merely a selling agent of the plaintiff with no title to the cement, and that in bartering it for a ship he was guilty of a conversion; but that as the plaintiff had held out Thompson as the owner of the cement both Miller and Duckworth were justified in dealing with him as the owner, Duckworth, as trustee, taking a good title to the property which he could transfer and as to the cement

bought by Allen & Robinson, Limited, did transfer to it; and that as to the von Hamm-Young Company, Limited, it was the mere receiver in good faith of the proceeds of such of the cement as it sold.

The point that the plaintiff was bound by its alleged holding out of Thompson as the owner of the cement, though not mentioned in that part of the court's decision which dealt specially with the von Hamm-Young Company's case, was a general finding applicable to both cases and if Duckworth obtained a good title by estoppel against the plaintiff, then upon the theory that the von Hamm-Young Company was a mere selling agent for Duckworth or Miller it would follow that the plaintiff cannot mantain its action against that company. We therefore regard the conclusion that the plaintiff had precluded itself from claiming ownership of the cement as against Duckworth and Miller as affecting both cases, and hold that there was error in that conclusion and in the decision in each case.

The evidence which was claimed by the defendants and held by the court below to constitute a holding out of Thompson by the plaintiff as the owner of the cement consisted of the possession of the cement by Thompson, testimony of the contents of the bill of lading to San Pedro which was exhibited by Thompson, and the warehouse receipts showing that the cement was stored in Honolulu in Thompson's name, which the court found were also exhibited to Duckworth and Miller, though the evidence as to this was not at all clear. Reference also was made to a letter said to have been addressed to Thompson by the plaintiff corporation, a mortgage on a sampan, and a bill for certain engines. But the letter was not produced nor was testimony as to its contents admitted, and we see no significance in the mention of the mortgage on the sampan or the bill for the engines as they seem to have had no connection with the ownership of the cement. It was not shown in whose name the cement was shipped to Honolulu, and, possibly, that would be of no consequence. The question then is whether the entrust-

NOVEMBER, 1913.                733

Riverside Portland Cement Co. v. von Hamm-Young, 21 Haw. 727.

ing of the cement to Thompson and his possession of the bill of lading and the warehouse receipts constituted a representation by the plaintiff that Thompson was the owner of the cement which would estop the plaintiff from asserting its title. No question as to the rights of a *bona fide* purchaser is involved. Neither Duckworth nor the Miller Salvage Company purchased the cement, and no consideration moved to the plaintiff from either defendant. Neither of the defendants claim to have bought upon the strength of any representations as to ownership in Thompson.

The case of *Pollard* v. *Reardon*, 65 Fed. 848, cited by the defendants, does not support the claim of estoppel made in this case. In that case the contest was between two parties who were creditors of the person who owned certain hides. Both held bills of sale of the hides, the consideration in each case being the endorsement of certain notes of the vendor. A bill of lading was given to the holder of the later bill of sale and it was held that he was entitled to the hides, upon their arrival at their destination, as against the holder of the earlier bill of sale. The court put it on the ground of estoppel, that the holder of the first bill of sale was presumed to have assented to the issue of the bill of lading to the second holder since he had not demanded it himself, also that as the holder of the later bill of sale took without notice of the prior bill and had in the meantime been compelled to pay the note he had indorsed he was in the position of a *bona fide* purchaser. Whether the views expressed in that case on the subject of bills of lading were in accord with those of the supreme court on the subject we need not stop to examine. In *Pollard* v. *Vinton,* 105 U. S. 7, 8, the court said, "A bill of lading is an instrument well known in commercial transactions, and its character and effect have been defined by judicial decisions. In the hands of the holder it is evidence of ownership, special or general, of the property mentioned in it, and of the right to receive said property at the place of delivery. Notwithstanding it is designed to pass from

hand to hand, with or without endorsement, and it is efficacious for its ordinary purposes in the hands of the holder, it is not a negotiable instrument or obligation in the sense that a bill of exchange or promissory note is. Its transfer does not preclude, as in those cases, all inquiry into the transaction in which it originated, because it has come into the hands of persons who have innocently paid value for it. The doctrine of bona fide purchasers only applies to it in a limited sense." In *The Carlos F. Roses,* 177 U. S. 655, 665, the court said, "Bills of lading stand as the substitute and representative of the goods described therein, and while *quasi* negotiable instruments, are not negotiable in the full sense in which that term is applied to bills and notes. The transfer of the bill passes to the transferee the transferor's title to the goods described, and the presumption as to ownership arising from the bill may be explained or rebutted by other evidence showing where the real ownership lies. A pledgee to whom a bill of lading is given as security gets the legal title to the goods and the right of possession only if such is the intention of the parties, and that intention is open to explanation. Inquiry into the transaction in which the bill orginated is not precluded because it came into the hands of persons who may have innocently paid value for it." In *Leuthold* v. *Fairchild,* 35 Minn. 99, 108, it was said that "A bill of lading is a symbol of the property. The indorsement and delivery of it is a symbolical delivery of the property, but does not, of itself, constitute a contract of sale any more than does an actual delivery of the property. Either operates to pass the title, when so intended. The intention and purpose with which the indorsement and delivery are made, and any conditions attached to the transaction, are open to explanation by parol, just as in the case of the actual delivery of the property itself. Naming one as consignee in, or indorsing and delivering to him, a bill of lading may be shown by parol to have been intended as evidence of an absolute sale, a trust, a mortgage, a pledge, a lien or a mere agency. The relation to the property of the par-

NOVEMBER, 1913.                    735

Riverside Portland Cement Co. v. von Hamm-Young, 21 Haw. 727.

ties named in it, or of the holder, and the purpose and effect of naming one as consignee in or indorsing and delivering the bill, are therefore not conclusively determined by the instrument itself, but may be shown by other evidence." Consistently with these principles this court held in the case of *Carty* v. *Jarrett,* ante, 274, 278 that where M, the owner of certain horses in San Francisco, shipped them by steamer to Honolulu in charge of H and consigned to H and M, and listed them in the same names with the federal quarantine officials, he was not estopped as against an attaching creditor of H to show that he was the sole owner of the animals and that H had no interest in them.

We are of the opinion that the warehouse receipts were no more effective as a representation by the plaintiff than the bill of lading and that the possession of the cement together with the bill of lading and warehouse receipts did not constitute a holding out of Thompson as the owner of the property. It follows that Allen & Robinson, Limited, when it bought, and von Hamm-Young Company, Limited, if it bought, did not get good title to the cement, and that the plaintiff is not estopped to assert its ownership.

At this time we prefer not to pass upon any of the other points which were argued as upon another trial the evidence may be different.

The judgments are vacated, the cases are remanded to the circuit court and in each a new trial is granted.

*A. L. Castle* and *D. L. Withington* (*Castle & Withington* on the brief) for plaintiff.

*E. W. Sutton* (*Smith, Warren, Hemenway & Sutton* on the brief) for von Hamm-Young Company, Limited.

*Holmes, Stanley & Olson* for Allen & Robinson, Limited.